UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AARON MCCOY,<br><br>    Plaintiff,<br><br>v.<br><br>M. TANN, et al.,<br><br>    Defendants. | Case No. 1:11-cv-1771-LJO-MJS (PC)<br><br>**FINDINGS AND RECOMMENDATIONS TO:**<br><br>**(1) GRANT IN PART AND DENY IN PART DEFENDANT JAMES, JONES, AND PAZ'S MOTION FOR SUMMARY JUDGMENT (ECF No. 57); AND**<br><br>**(2) GRANT DEFENDANT JIMENEZ'S MOTION FOR SUMMARY JUDGMENT (ECF No. 60)**<br><br>**FOURTEEN (14) DAY OBJECTION DEADLINE** |

## I. PROCEDURAL HISTORY

Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights action brought pursuant to 42 U.S.C. § 1983. (ECF No. 1 & 6.) This matter proceeds against Defendants James, Jones, Paz, and Jimenez on Plaintiff's Eighth Amendment claim for cruel and unusual punishment. (ECF No. 20.)

On January 10, 2014, Defendants James, Jones, and Paz filed a motion for summary judgment. (ECF No. 57.) On January 23, 2014, Defendant Jimenez filed a separate motion for summary judgment. (ECF No. 60.) Plaintiff was granted leave to conduct additional discovery and an extension of time to file his opposition. (ECF No.

78.) Plaintiff filed his opposition on October 17, 2014 (ECF No. 79), and Defendants filed replies (ECF Nos. 80, 81). These matters are deemed submitted pursuant to Local Rule 230(*l*).

## II. LEGAL STANDARD

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Wash. Mut. Inc. v. United States, 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed R. Civ. P. 56(c)(1).

Plaintiff bears the burden of proof at trial, and to prevail on summary judgment, he must affirmatively demonstrate that no reasonable trier of fact could find other than for him. Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). Defendants do not bear the burden of proof at trial and, in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case. In re Oracle Corp. Secs. Litig., 627 F.3d 376, 387 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, Soremekun, 509 F.3d at 984, and it must draw all inferences in the light most favorable to the nonmoving party, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011).

## III. FACTUAL SUMMARY

### A. Plaintiff's Claims

Plaintiff is incarcerated at Kern Valley State Prison, but complains of acts that occurred in the Administrative Segregation Unit ("Ad-Seg") at California Substance

Abuse Treatment Facility ("CSATF") in Corcoran, California. His allegations may be summarized in relevant part as follows:

On June 9, 2010, Plaintiff was one of several inmates in Ad-Seg who covered up his cell windows to protest the treatment of inmates in his housing facility and to attract the Warden's attention to the inmates' grievances. Plaintiff spoke with the Warden and with Defendant James, and agreed to leave his cell provided he was restrained with waist chains and not handcuffed behind his back due to a medical condition.

Several hours later, Defendants James, Jones, Paz, and Jimenez arrived to carry out the cell extraction. Plaintiff was ordered to strip and to cuff up. Plaintiff again advised Defendants he needed waist chains to comply. Defendant Jones then used a particularly strong form of pepper spray against Plaintiff. Plaintiff experienced burning pain. He was required to go through a strip search and was not permitted to put on boxer shorts after the search. Plaintiff was handcuffed behind his back despite his medical condition and was removed naked from his cell.

Defendant Paz took Plaintiff to the shower and allowed Plaintiff to shower for four seconds. Plaintiff was taken to an outside cage where he remained naked and handcuffed behind his back for several hours. Defendant Jones saw Plaintiff outside. Plaintiff complained to him of pain, but Jones refused to remove Plaintiff's handcuffs. Plaintiff eventually was uncuffed, given boxer shorts, and returned to administrative segregation.

Plaintiff's claims for cruel and unusual punishment are based on the allegation that Defendants failed to adequately decontaminate him following the application of pepper spray.

### B. Undisputed Facts

The Court finds, based on the submissions of the parties, that the following relevant facts are undisputed.

On June 9, 2010, Plaintiff was one of several inmates in Ad-Seg who covered up cell windows. The Associate Warden instructed Defendant James to initiate tactical cell

extraction of the inmates. Defendants James, Jones, Paz, and Jimenez participated in the cell extraction.

Defendant James approached Plaintiff's cell and gave him a cell extraction admonishment. Plaintiff refused to comply.[1] Defendant James then instructed Defendant Jones to administer a single burst of pepper spray into Plaintiff's cell through the food port. There is a dispute as to whether Plaintiff attempted to comply following the first burst of pepper spray. Regardless, Defendant James instructed Defendant Jones to administer a second burst of pepper spray. This burst hit Plaintiff in the groin.

Following the second burst of pepper spray, Plaintiff uncovered his windows, was searched and handcuffed, and was removed naked from his cell. Plaintiff was taken by an escort team, including Defendant Paz, to a shower. Plaintiff was placed under the shower for approximately four seconds. He then was taken to an outdoor management cell. While in the outdoor management cell, he complained to medical staff of burning pain in his groin.

Defendant James did not see or communicate with Plaintiff after he was removed to the outdoor cell. Defendant Paz escorted Plaintiff to the outdoor cell. Defendant Jones spoke with Plaintiff while he was in the outdoor cell, but the substance of those conversations is disputed.

Defendant Jimenez served as a shield officer for the extractions, and his responsibilities included entering an inmate's cell first to pin down a resisting inmate. He did not decontaminate inmates or escort inmates outside. Because Plaintiff submitted to restraints after being exposed to pepper spray, Defendant Jimenez's duties as a shield officer were not required, and he only stood on standby in the event he was needed.[2]

---

[1] Plaintiff states that he refused to comply because he required waist chains rather than handcuffs. However, for purposes of this motion, the Court finds the reasons for Plaintiff's non-compliance to be immaterial.

[2] Plaintiff disputes facts set out in Defendant Jimenez's declaration on the basis that Plaintiff has no knowledge of these facts. However, his contention that a fact is disputed must be supported by particular material in the record, including but not limited to depositions, documents, declarations, or discovery. Fed. R. Civ. P. 56(c)(1). There is no such support here. Accordingly, the Court concludes these facts are not in dispute.

## IV. Discussion

### A. Legal Standard – Cruel and Unusual Punishment

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners from inhumane methods of punishment and inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citations omitted). "[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 511 U.S. 825, 847 (1994).

A conditions of confinement claim has both an objective and a subjective component. See Farmer, 511 U.S. at 834. "First, the deprivation alleged must be . . . sufficiently serious," and must "result in the denial of the minimal civilized measure of life's necessities." Id. (internal quotation marks and citations omitted) "[E]xtreme deprivations are required to make out a conditions-of-confinement claim." Hudson v. McMillian, 503 U.S. 1, 9 (1992).

Second, the prison official must have acted with "deliberate indifference" to inmate health or safety. Farmer, 511 U.S. at 834. "Mere negligence is not sufficient to establish liability." Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998). Rather, a plaintiff must show that a defendant knew of, but disregarded, an excessive risk to inmate health or safety. Farmer, 511 U.S. at 837. That is, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.

Delays in providing showers and medical attention for inmates suffering from harmful effects of pepper spray may violate the Eighth Amendment. Clement v. Gomez, 298 F.3d 898, 905-06 (9th Cir. 2002).

### B. Parties' Arguments

Defendants James, Jones, and Paz argue that they were not deliberately indifferent to a risk of harm to Plaintiff because Plaintiff was, in fact, decontaminated

5

with running water and fresh air. (ECF No. 57 at 6.) Moreover, Defendant James did not see Plaintiff once Plaintiff was outside, nor did Plaintiff ask Defendant James for further decontamination. Thus, Defendant James was not aware of a risk of harm to Plaintiff. (Id. at 11.) Nor can Defendant James be held liable based on his supervision of the cell extraction. (Id.) Similarly, Plaintiff did not ask Defendants Jones and Paz for further decontamination and, in any event, Plaintiff was decontaminated with running water and fresh air. (Id. at 12.) Finally, Defendants argue that they are entitled to qualified immunity because they did not violate Plaintiff's constitutional rights, and Plaintiff was decontaminated consistent with Defendants' annual use-of-force training. (Id. at 13-14.)

Defendant Jimenez argues that his participation in the cell extraction was minimal and, as such, he was not responsible for decontaminating Plaintiff nor aware of any deficiencies in Plaintiff's decontamination. (ECF No. 60 at 11.) For the same reasons, Defendant Jimenez argues he is entitled to qualified immunity. (Id. at 15.)

Much of Plaintiff's opposition is directed toward the reasons Plaintiff covered his windows, the need for the use of pepper spray, Defendants' comportment during the cell extraction, Defendants' decision to handcuff Plaintiff behind his back, and Defendants' refusal to allow Plaintiff to put on boxer shorts following the cell extraction. (ECF No. 79.) However, the instant action is limited to Plaintiff's Eight Amendment claim based on inadequate decontamination from pepper spray. (ECF No. 20.) Accordingly, these other contentions will not be addressed.

In relevant part, Plaintiff argues that asking Defendant James for further decontamination would have been futile. (ECF No. 79 at 12-13). In any event, Defendant James deliberately "made himself scarce" and therefore Plaintiff could not ask him for further decontamination.  Plaintiff asserts that he asked Defendant Jones to uncuff him so that he could properly decontaminate, but that Defendant Jones refused. (Id. at 5.) He also asserts that he attempted to stay in the shower longer, but was prevented from doing so by Defendant Paz. He argues that Defendant Jimenez was with the "rest of the 'mob'" and has a history of misconduct, thus creating a possibility

that he too was deliberately indifferent to Plaintiff's need for further decontamination. (ECF No. 79 at 15.)

The parties' arguments with respect to each Defendant are discussed in greater detail below.

**C.     Analysis**

    **1.     Decontamination**

Defendants James, Jones, and Paz argue that Plaintiff was decontaminated from pepper spray through exposure to fresh air and water, and thus Defendants could not have been deliberately indifferent to Plaintiff's safety. (ECF No. 57 at 10.) In support, Defendants provide the following statement in the declaration of Defendant Jones:

> Pursuant to my annual use of force training, there are two ways to decontaminate from the effects of exposure to pepper spray. One way is to wash the exposed area with cool water. The other method is to expose the area to fresh air. Pepper spray residue evaporates with time, and water and/or air helps accelerate this process.

(ECF No. 57-3 at 4.)

Defendants provide no other evidence to support their claim that Plaintiff was effectively decontaminated.[3]

Several factors lead the Court to conclude that there is a genuine dispute of material fact as to whether Plaintiff was, in fact, effectively decontaminated. The most significant factor is Plaintiff's statements to the contrary. In his declaration, in medical records following the incident, and in the video of the cell extraction submitted by Defendants, Plaintiff can be heard to complain of continued burning pain in his groin following his alleged decontamination. His continued pain may be construed as an indication that the decontamination was ineffective.

Additionally, a reasonable juror viewing the video of the cell extraction could conclude that Plaintiff's exposure to running water was insufficient to effectively

---

[3] Defendant James' declaration also states that exposure to fresh air and water are methods for decontaminating from pepper spray, but he does not state the basis for his knowledge.

7

1  decontaminate him. The video shows (and Plaintiff confirms) that Plaintiff was placed in
2  a cell block shower, with water running over his head, for approximately four seconds.
3  Defendant Jones states that one way to decontaminate from pepper spray is to "wash
4  the <u>exposed area</u> with water." A reasonable juror may well conclude that running water
5  over Plaintiff's head for four seconds would be ineffective in decontaminating his groin.
6  Notably, the video also shows that other prisoners involved in the cell extraction were
7  escorted to an outside decontamination area and exposed to copious amounts of
8  running water for a markedly longer period of time than Plaintiff.
9       Defendants also argue that Plaintiff was provided effective decontamination
10 because there was a sink in the outdoor cell that Plaintiff could have used to
11 decontaminate himself. Indeed, the video evidence shows Plaintiff attempting to do
12 precisely that. Specifically, Plaintiff attempted to decontaminate by: 1) pressing a button
13 on the side of the sink to start the flow of running water, 2) climbing on top of the sink
14 while handcuffed behind his back, and 3) attempting to straddle the faucet so the flow of
15 water would reach his groin. Plaintiff states, and Defendants do not dispute, that the
16 sink had a timer and did not provide a continuous flow of water. Thus, continuing the
17 flow of water would have required Plaintiff to straddle the faucet and lean over at more
18 than a ninety degree angle to enable his cuffed hands to reach the button. Although
19 Plaintiff conceded in his deposition that such acrobatics may be technically possible, a
20 reasonable juror could conclude that requiring such actions does not amount to
21 providing effective decontamination.
22      Finally, the Court must address Defendants' contention that Plaintiff was
23 effectively decontaminated because he was exposed to fresh air. Plaintiff's opposition
24 includes as an exhibit a page from a January 2006 Division of Correctional Health Care
25 Services manual stating that "[d]econtamination includes removal of all contaminated
26 clothing and showering in cold/cool water or thorough rinsing with cold/cool water to
27 remove all traces of [Oleoresin Capsicum} from the skin and hair." (ECF No. 79 and 49.)
28 The manual does not mention decontamination with air. Further, the Ninth Circuit has

1  held that delays in providing showers to inmates suffering from the harmful effects of
2  pepper spray may violate the Eighth Amendment. <u>Clement v. Gomez</u>, 298 F.3d 898,
3  905-06 (9th Cir. 2002). Thus, there is some dispute as to whether decontamination with
4  air is sufficient.

5  However, even accepting that Defendants were trained that decontamination with
6  fresh air is an appropriate option, Defendants provide insufficient detail regarding the
7  appropriate use of air. Presumably, inmates are exposed to air at all times (although the
8  freshness of that air may be a matter of some debate). Nevertheless, despite this ready
9  access to air, the Ninth Circuit has held that delays in providing showers may constitute
10 deliberate indifference. <u>Id.</u> Based on this conflict, a reasonable juror may conclude that
11 merely placing a naked inmate outdoors is not an appropriate means of
12 decontamination in all circumstances, particularly where pepper spray is applied directly
13 to the skin, as opposed to merely being present in the air. Without additional detail
14 regarding when and how air may be used to decontaminate, Plaintiffs are not entitled to
15 summary judgment on this basis.

16 Defendants Jones, James, and Paz also argue that they are entitled to qualified
17 immunity on the basis of their training that fresh air and water are the two methods of
18 decontaminating from pepper spray. However, this argument fails due to the conflicts in
19 the evidence discussed herein.

20 **2.  Defendant James**

21 Defendant James states that he did not see or communicate with Plaintiff after he
22 was placed in an outdoor cell, Plaintiff did not request further decontamination from
23 Defendant James, and Defendant James was not informed by other staff that Plaintiff
24 requested further decontamination. Accordingly, James argues, he was not put on
25 notice of a risk of serious harm to Plaintiff. Additionally, to the extent Plaintiff may
26 attempt to argue that James should be held liable in his supervisory capacity, James
27 argues that that the plan for cell extractions included decontaminating inmates with cool
28 water and then placing them in an outdoor cell. Defendant James was not made aware

of Plaintiff's claim that his decontamination was ineffective.

Plaintiff concedes that he did not request further decontamination from Defendant James. He argues that doing so would have been futile because Defendant James preplanned the events and would not have deviated from his course of conduct. He also contends that Defendant James "deliberately made himself scarce", and therefore further decontamination could not be requested of him.

Plaintiff has provided no evidence that Defendant James was aware of Plaintiff's need for further decontamination. His speculation that Defendant James must have known is insufficient to demonstrate that he actually knew. McSherry v. City of Long Beach, 584 F.3d 1129, 1138 (9th Cir. 2009) ("Summary judgment requires facts, not simply unsupported denials or rank speculation."). Similarly, the implication that Defendant James would have denied further decontamination had Plaintiff asked is too speculative to create a dispute of fact. Thus, Plaintiff has failed to raise a triable issue as to whether Defendant James knew of, but disregarded, a serious risk of harm to Plaintiff.

Defendants' motion for summary judgment with respect to Defendant James should be granted.

### 3.     Defendant Jones

Defendant Jones states that he spoke with Plaintiff while Plaintiff was held in the outside cell. Defendant Jones does not recall the substance of the conversations, but denies Plaintiff asked for additional decontamination.

Plaintiff contends that he did, in fact, ask Defendant Jones to uncuff him so he could decontaminate. (ECF No. 79 at 81; see also ECF No. 19 at 17.) He also complained to Defendant Jones of pain.

Based on the representations of the parties, there is a dispute of fact as to whether Defendant Jones knew of, but disregarded a serious risk of harm to Plaintiff due to inadequate decontamination. Summary judgment with respect to Defendant Jones should be denied.

### 4. Defendant Paz

Defendant Paz states that Plaintiff did not ask for additional decontamination.

Plaintiff states that he attempted to stay in the shower for as long as possible, but Defendant Paz stated, "That's enough," and took Plaintiff away.

The Court finds there is a dispute as to whether Defendant Paz knew that Plaintiff required further decontamination. First, as stated above, a reasonable juror could find that the shower provided to Plaintiff by Defendant Paz was insufficient to decontaminate Plaintiff's groin. This is supported by Plaintiff's statement that he attempted to stay in the shower longer but was prevented from doing so. Additionally, in his deposition, Plaintiff stated that he asked Defendant Paz to uncuff him so he could decontaminate. This contention is supported by video evidence in which Plaintiff asks Defendant Paz to uncuff him, and can be heard complaining of burning pain in his groin as Defendant Paz walks away.

Accordingly, there is a dispute of fact as to whether Defendant Paz knew of, but disregarded a serious risk of harm to Plaintiff due to inadequate decontamination. Summary judgment with respect to Defendant Paz should be denied.

### 5. Defendant Jimenez

Defendant Jimenez states that he was not responsible for decontaminating Plaintiff or any other inmate and did not escort Plaintiff outside. Defendant Jimenez was not aware of the length of time Plaintiff was permitted to decontaminate, whether Plaintiff was able to decontaminate thoroughly, or whether Plaintiff complained of inadequate decontamination after he was escorted outside. Once Plaintiff was escorted outside, Defendant Jimenez did not see him again that day.

Plaintiff contends that Defendant Jimenez should be held liable because he was one of the "mob." (ECF No. 79 at 14.) He also contends that Jimenez was part of a "pre-game" plan to handcuff Plaintiff for a prolonged period of time, thereby preventing decontamination. He asserts that Jimenez has engaged in "rogue" behavior with other inmates. Finally, Plaintiff disputes Jimenez's contention that he did not see Plaintiff once

Plaintiff was outside. Plaintiff states that Defendant Jimenez likely came outside at various points, and would have been in plain view of Plaintiff. However, Plaintiff does not dispute that he did not speak with Jimenez once he was taken outside.

Defendant Jimenez replies that Plaintiff presents no evidence that Jimenez pepper sprayed him, decontaminated him, failed or refused to allow Plaintiff's decontamination, or otherwise caused him harm.

Plaintiff has submitted no evidence from which a reasonable juror could conclude that Defendant Jimenez knew of, but disregarded Plaintiff's allegedly inadequate decontamination. Instead Plaintiff relies upon an inference of deliberate indifference arising out of Defendant Jimenez's mere participation in the cell extraction. This is insufficient to meet Plaintiff's burden on a motion for summary judgment. See E.E.O.C., v. Boeing Co., 577 F.3d 1044, 1050 (9th Cir. 2009) (inferences arising from direct evidence may constitute proof for purposes of summary judgment provided they are "specific and substantial", not merely speculative).

Defendant Jimenez's motion for summary judgment therefore should be granted.[4]

## V. CONCLUSION AND RECOMMENDATION

The Court finds that Plaintiff has not met his burden of putting forth sufficient evidence to raise a triable issue of fact regarding the liability of Defendants James and Jimenez. However, Plaintiff has raised a triable issue regarding the liability of Defendants Jones and Paz.

Accordingly, the Court HEREBY RECOMMENDS that Defendants James, Jones, and Paz's motion for summary judgment (ECF No. 57) be GRANTED IN PART AND DENIED IN PART. The Court further recommends that Defendant Jimenez's motion for summary judgment (ECF No. 60) be granted.

---

[4] Because the Court concludes that Plaintiff has failed to present evidence that Defendant Jimenez's conduct was unconstitutional, the Court does not address Defendant Jimenez's qualified immunity argument.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with these Findings and Recommendations, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   March 19, 2015               /s/ *Michael J. Seng*
                                      UNITED STATES MAGISTRATE JUDGE